56 CCPA

**Application of Robert D. BROADLEY.**
**Patent Appeal No. 8013.**

United States Court of Customs
and Patent Appeals.
Dec. 19, 1968.

Jay P. Friedenson, Morristown, N. J., for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and BALDWIN, Judges.

WORLEY, Chief Judge.

Broadley alleges reversible error in the decision of the Board of Appeals affirming the examiner's rejection of claims 1–6 [1] as unpatentable over Lewis [2] in view of Midgley [3] under 35 U.S.C. § 103.

The invention relates to a high capacity,[4] low boiling, azeotropic refrigerant composition consisting of difluoromethane ($CH_2F_2$; boiling point of –51.7° C.) and monochloropentafluoroethane ($C_2F_5Cl$; boiling point of –38.7° C.), as well as to a method of refrigerating using that composition. It appears from the record that azeotropic compositions—ones in which the vapor composition is the same as the boiling liquid composition with which it is in equilibrium—are advantageous refrigerants compared to non-azeotropic multicomponent mixtures since fractionation or separation of the components of the composition, with attendant increase in condenser pressures and overall loss of efficiency, does not occur during the refrigeration cycle. Appellant's azeotropic compositions consisting of 30–33 mol % $C_2F_5Cl$ exhibit a constant, minimum boiling point of –57.3° C., whereas mixtures consisting of 13–65% $C_2F_5Cl$ have boiling points differing only slightly—about 0.7° C. or less—from that of the azeotrope. According to appellant, his compositions boil at temperatures lower than the boiling point of either pure component, and thus exhibit a negative deviation from Raoult's law, an empirical rule to the effect that boiling points and vapor pressures of two-component mixtures vary with concentration between the val-

---

1. Appearing in application serial No. 313,643, filed October 3, 1963 as a continuation-in-part of serial No. 179,237, filed March 12, 1962 for "Fluorinated Hydrocarbon Compositions."

2. U. S. Patent 2,641,580, issued June 9, 1953.

3. U. S. Patent 1,968,050, issued July 31, 1934.

4. In explanation, the specification states:
   The refrigeration capacity of a given amount of refrigerant is largely a func-

tion of boiling point, the *lower boiling* refrigerants generally offering the *greater capacity* at a given evaporator temperature. This factor to a great extent influences the design of refrigeration equipment and affects capacity, power requirements, size and cost of the unit. Another important factor directly related to boiling of the refrigerant is minimum cooling temperature obtained in the evaporator during the refrigeration cycle, the lower boiling refrigerants being used to effect the lower refrigeration temperatures. [Emphasis supplied.]

ues for the pure components. It appears that the high capacity of appellant's compositions relative to that of either component is due to the fact that the compositions are azeotropic and boil at a lower temperature than either component alone.

Claim 1 is representative:

1. A low boiling composition consisting of a mixture of difluoromethane and monochloropentafluoroethane, in which mixture the mol percent of monochloropentafluoroethane is substantially in the range of 13–65.

The examiner noted that Lewis discloses an essentially azeotropic refrigerant composition consisting of 20–40 mol percent of 1, 1-difluoro*ethane* and 60–80 mol percent of the heretofore mentioned $C_2F_5Cl$. The actual azeotrope, formed at 69 mol percent $C_2F_5Cl$, has a minimum boiling point of –41.3° C., and thus exhibits a negative deviation from Raoult's Law. Observing that Lewis does not disclose the use of $CH_2F_2$ in refrigerant compositions or as a component of an azeotropic mixture, the examiner turned to Midgley, who discloses that $CH_2F_2$, $C_2F_5Cl$ or $CH_3CHF_2$, among many other fluorohydrocarbons, each may be used *individually* as refrigerants [5] and also shows the boiling point of each

of those compounds in his figures 1 and 2. In the examiner's view, it "would be obvious to one having ordinary skill in the art to substitute * * * [$CH_2F_2$] for the * * * [$CH_3CH_2$] of Lewis with the expectation of obtaining suitable results" in view of the fact that $CH_2F_2$ is a known low boiling refrigerant and is the adjacent lower homolog of $CH_3CHF_2$. Quite evidently, the examiner felt that the homologous relationship between $CH_2F_2$ and $CH_3CHF_2$ would be sufficient in and of itself to enable one of ordinary skill to predict that $CH_2F_2$ and $C_2F_5Cl$, like the known $CH_3CHF_2$ and $C_2F_5Cl$, would form a useful azeotropic refrigerant composition. The board agreed.

Appellant contends here, as below, that nothing in the prior art of record suggests that $CH_2F_2$ and $C_2F_5Cl$ would form an azeotropic composition possessing high refrigeration capacity. Indeed, appellant urges that "there is no known basis for predicting the formation of an azeotrope" between two given fluorohydrocarbons. In support of that argument, he points to the Kvalnes patent [6] cited by him in his brief before the board, as well as to certain proprietary data appearing in the same brief.[7] It

---

5. Appellant erroneously contends that neither $CH_2F_2$ nor $C_2F_5Cl$ is specifically disclosed by Midgley. To the contrary, $CH_2F_2$ is denoted as "$F_2$" in Fig. 1 of Midgley while $CH_3CHF_2$ and $C_2F_5Cl$ are denoted as "0.2" and "3.8", respectively, in Fig. 2 of the reference. The point is not particularly crucial in view of the fact that appellant has not argued in his brief that the components of his composition were not individually known to be refrigerants at the time of his invention.

6. U.S. Patent 3,085,065, issued April 9, 1963.

In the course of discussing formation of azeotropic refrigerant compositions of fluorohydrocarbons, Kvalnes states:

* * * *It is impossible to predict that an azeotrope will form between any two compounds and so it is impossible to pick any two refrigerants and combine them to obtain an azeotrope boiling at some particular point by prediction. If*

*an azeotrope occurs at all, its boiling point is a function of the system and is not under the control of the experimenter. The mere existence of a large number of fluorinated hydrocarbons does not aid in predicting the formation of azeotropes by mixtures thereof.* [Emphasis supplied.]

The Kvalnes patent does appear to be of evidentiary value in determining the level of skill of those in the art. See Graham v. John Deere Co. of Kansas City, Mo., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545.

7. There, appellant made certain comparisons between pairs of two component fluorocarbon refrigerants, stating:

* * * The ability to make such a prediction [of azeotrope formation] is not aided by closeness in structure of one compound to another or its closeness in structure to a compound which is known to have formed an azeotrope with another material. By way of ex-

is appellant's position that he has established that the mere *fact* of homology between $CH_2F_2$ and $CH_3CHF_2$ would be of no material assistance to one in the art in determining or predicting *a priori* the proclivity of $CH_2F_2$ to form an azeotrope with $C_2F_5Cl$, while the examiner has offered no evidence to support the bare assertion that homology would be of assistance in that regard.

The board acknowledged that appellant "documents the unpredictable nature of determining azeotropic pairs of compounds" in his brief before it, thus apparently accepting the comparisons made by appellant and the statements of Kvalnes as factual and accurate.[8] Like the examiner, however, the board found it could "give no weight to appellant's argument that the determination of azeotropic mixtures is empirical in nature." The only reason each assigned was that "the claims are not limited to azeotropic mixtures."

Strictly speaking, of course, the examiner and board are correct in observing that none of appellant's claims is directed to a true azeotropic composition consisting of 30–33% $C_2F_5Cl$ and 67–70% $CH_2F_2$. But it appears to us that appellant also is correct in stating that all his claims are directed to compositions which are, for all intents and purposes, *essentially* azeotropic in nature and which possess the desirable features, e. g. negligible fractionation, of azeotropic compositions.[9] As appellant points out, his specification states:

\* \* \* It has also been found that mixtures consisting of difluoromethane and monochloropentafluoroethane substantially in the range of 13–65% monochloropentafluoroethane have boiling points differing only slightly from the azeotropic composition. *Compositions within this range will exhibit only negligible fractionation on boiling and represent useful refrigerants.* \* \* \*

\* \* \* \* \* \*

\* \* \* The 13–65% chloropentafluoroethane compositions indicated

---

ample the following relationship should be considered:

1. $CH_2F_2/CF_3Br$ forms an azeotrope. $CH_3CHF_2/CF_3Br$ does not form an azeotrope.
2. $CHF_3/CF_3Cl$ forms an azeotrope. $CH_3CF_3/CF_3Cl$ does not form an azeotrope.
3. $CH_3CF_3/C_2F_5Cl$ forms an azeotrope. $CHF_3/C_2F_5Cl$ does not form an azeotrope.
4. $CHF_2Cl/CCl_2F_2$ forms an azeotrope. $CH_3CF_2Cl/CCl_2F_2$ does not form an azeotrope.
5. $CHF_2Cl/C_2F_5Cl$ forms an azeotrope. $CH_3CF_2Cl/C_2F_5Cl$ does not form an azeotrope.

\* \* \* \* \*

It should be noted that the \* \* \* five relationships are homologous relationships as regards the first noted components, thus demonstrating that the doctrine of homology is of no assistance in providing a basis for the prediction of the formation of an azeotrope. \* \* \*

8. In his brief, the solicitor urges that the comparisons presented by appellant should be "regarded as argument only, and without merit, since appellant cites no evidence or authority in support of" those comparisons. As we see it, neither the truth of what appellant presented nor its form was placed in issue below.

9. Indeed, that those in the art would regard appellant's claimed compositions to be essentially azeotropic despite minor deviations from the constant boiling point of the azeotrope is clear, we think, from Lewis, who states:

I have discovered that mixtures of 1,1– difluoroethane and monochloropentafluoroethane form an azeotrope boiling at approximately $-41.3°$ C., in which about 69 mole percent is monochloropentafluoroethane. The mixture is a highly useful refrigerant \* \* \* This mixture has the further advantage that only slight changes in the boiling point occur when the composition is varied over a considerable range on either side of the actual azeotropic composition. Mixtures containing between 60 and 80 mole percent monochloropentafluoroethane all boil between about $-41.1°$ and $-41.3°$ C., *so that there is little tendency for fractionation to take place with any of these mixtures. They are all effective refrigerating agents.* [Emphasis supplied.]

each has a boiling temperature variation of less than 0.75° C., from the minimum boiling minus 57.3° C. azeotrope composition. As compositions containing 13–65% $C_2F_5Cl$ all boil between about –56.6° C and –57.3° C., representing a maximum boiling temperature variation within 0.75° C., *no significant fractionation occurs on distillation of any compositions within this range, and all such compositions are suited for use as refrigerants.*

\* \* \* \* \* \*

The system formed by herein mixtures of difluoromethane and monochloropentafluoroethane provides a broad range of mixture compositions which boil at substantially constant temperature and give a constant boiling composition. The azeotropic and substantially azeotropic mixtures differ from refrigerant mixtures proposed in the past which offer only a relatively narrow range of useful compositions. \* \* \* [Emphasis supplied.]

In view of those statements, it seems to us that the examiner and board were unduly critical of appellant's claimed subject matter in unnecessarily requiring appellant to limit his claims to true azeotropic compositions consisting of 30–33% $C_2F_5Cl$ before giving consideration to his argument.

Turning to the arguments presented, we think that whatever reasons the examiner and board may have had—but not expressed or documented—for their belief or presumption that the homologous relationship between $CH_2F_2$ and $CH_3CHF_2$ would be of assistance to those in the art in predicting formation of an azeotrope between $CH_2F_2$ and $C_2F_5Cl$ have been adequately rebutted by appellant. The only other reason offered by the board in support of its finding of obviousness is that one might well predict that substitution of the lower boiling $CH_2F_2$ for the higher boiling $CH_3CHF_2$ in the Lewis composition would yield a mixture boiling at a lower temperature, and thus possessing a higher refrigerating capacity, than that of Lewis. How-

ever true that may be, it would seem there would be no assurance that such a two-component mixture would have a capacity roughly twice that of Lewis as shown by an affidavit of Atwood, or even be a particularly useful or efficient refrigerant, absent a teaching that a minimum boiling, substantially azeotropic, non-fractionating composition would result. It is that teaching which we think is missing here.

Considering the record in its entirety, we find inadequate evidence to sustain the conclusion below that the claimed subject matter as a whole would be obvious to one of ordinary skill within the purview of § 103.

The decision is reversed.

Reversed.

SMITH, J., participated in the hearing of this case but died before a decision was reached.